**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

TRAVIS G.

      Plaintiff,

v.                                                          Civ. No. 24-1155 GJF

FRANK J. BISIGNANO, *Commissioner*
*of the Social Security Administration*,[1]

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**ON PLAINTIFF'S MOTION TO REVERSE AND REMAND**

THIS MATTER is before the Court on *Plaintiff's Motion to Reverse the Administrative Law Judge's (ALJ) Unfavorable Decision Dated April 29, 2024, or Alternatively, to Remand the Case Back to the Administrative Law Judge (ALJ)* and supporting brief [Docs. 10-11] ("Motion"), dated February 6, 2025, challenging the determination of the administrative law judge ("ALJ") that he is not entitled to disability insurance benefits or supplemental security income under Title II or Title XVI of the Social Security Act, respectively. The Motion is fully briefed. *See* Docs. 16 and 17. The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, finds that Plaintiff's Motion should be **DENIED** and the case should be dismissed with prejudice.

## I.    BACKGROUND

In July 2021, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that he became disabled in December 2014. *See* Administrative Record (Doc. 9

---

[1] Commissioner Bisignano was sworn in as Commissioner of the Social Security Administration on May 7, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), he is "automatically substituted as a party."

and attachments thereto, hereafter "AR")[2] at 240-255. On July 18, 2022, the Social Security Administration denied his claims. AR 131-140. Plaintiff filed a request for reconsideration, AR 141-143, and on July 15, 2023, that request was denied as well. AR 144-151. Plaintiff thereafter filed a request for hearing by an ALJ. AR 152. On February 29, 2024, the ALJ held a telephonic hearing at which Plaintiff was represented by counsel. AR 36-58. Todd M. Harden, an impartial vocational expert, also appeared at the hearing. *Id*. In a written decision dated April 29, 2024, the ALJ concluded that Plaintiff has various severe impairments, but that he still retains sufficient residual functional capacity in light of his age, education, and work experience to perform certain light work in occupations such as mail clerk, hand packager, and housekeeping cleaner. On September 27, 2024, the Appeals Council declined to review the ALJ's decision. AR 1-6. On November 13, 2024, Plaintiff appealed to this Court, Docs 1-2, which has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff, who is now a 50-year-old man, AR 28, points out that between them, the Commissioner and the ALJ found him to have fifteen severe impairments. Doc. 11 at 2-3. The ALJ found that Plaintiff suffers from ten impairments, but Plaintiff does not argue that the ALJ erred in failing to find additional impairments. Instead, Plaintiff argues that the ALJ erred by not finding that these ten impairments render him disabled. *Id*.

---

[2] Plaintiff did not refer to exhibits in the record using the pagination of the Administrative Record, but rather referred to various other descriptions of page numbers, and sometimes no page numbers at all. This made the Court's job more challenging, though ultimately it was able to find almost every page in the record to which Plaintiff referred. The Court directs counsel for Plaintiff to refer to AR page numbers exclusively in future cases.

## II.  STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The first four steps require the claimant to show that (1) she is not "presently engaged in substantial gainful activity," (2) "[she] has a medically severe impairment or combination of impairments" that is severe, and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 750-51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and

supported her findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases[.]" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so[.]" *Hamlin*, 365 F.3d at 1214.

The Commissioner's factual findings, on the other hand, are presumed conclusive so long as substantial evidence supports them. 42 U.S.C. § 405(g). Under this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* at 103 (quotation omitted). On the other hand, substantial evidence is less than a preponderance. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 97, 103 (quotation omitted).

Under this substantial evidence standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not

its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III. PLAINTIFF'S CONTENTIONS

Plaintiff contends that he is entitled to remand for three reasons: (1) the ALJ impermissibly relied upon portions of evidence from certain medical records and reports without considering the contrary material evidence in those documents and without considering the experts' overall conclusions; (2) the ALJ's decision was not supported by substantial evidence; and (3) the ALJ failed to consider the Plaintiff's impairments in combination. Doc. 10 at 1.

## IV. ALJ'S DECISION AND FINDINGS

### A. Steps One Through Three

At step one of the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act for the relevant period and that he had not engaged in substantial gainful activity since December 31, 2014, which is the alleged date of onset of disability. AR 19.

At step two, the ALJ concluded that Plaintiff has numerous severe impairments. These include obesity, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, hepatitis C, headaches, post-traumatic stress disorder (PTSD), major depressive disorder, anxiety disorder, bipolar disorder, and schizoaffective disorder. AR 19. The ALJ further noted that these impairments significantly limit Plaintiff's ability to perform basic work activities.

AR 20. The ALJ concluded that Plaintiff's insomnia and blackouts are not severe, respond well to conservative treatment, and do not have more than a minimal effect on his ability to perform basic work activities.

The ALJ concluded at step three that none of these impairments, individually or collectively, matched the severity of one of the "listed impairments" set forth in federal regulations. AR 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 20-22. For example, the ALJ acknowledged Plaintiff's pain in his neck and back, his decreased range of motion in his cervical spine, and his occasionally abnormal gait. Imaging of Plaintiff's cervical and lumbosacral spine, however, showed only mild degenerative changes, and he regularly has shown normal posture, gait, and the ability to walk without an assistive device. Plaintiff also can use both arms to complete work-related activities. Thus, Plaintiff's cervical and lumbar spine impairments did not satisfy any listing. AR 20. In the absence of a listing for headaches, the ALJ considered Plaintiff's impairment under the analogous listing for epilepsy. The ALJ rejected this listing because "there is no objective medical evidence that shows the claimant's headaches have resulted in the level of altered awareness or significant interference with activities required" for the listing. AR 21.

Next, the ALJ considered Plaintiff's mental impairments, singly and in combination. AR 21-22. Those impairments are (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  For each category, the ALJ considered both the Plaintiff's reported symptoms as well as the physicians' observations, objective medical evidence, medical opinions, and prior administrative medical findings as documented in the records, and for each of the four categories the ALJ found only a moderate impairment. *Id*.

**B.    Steps Four and Five**

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work (as defined by 20 C.F.R. §§ 404.1565 and 416.965) as a boiler mechanic. AR 27-28.  Nevertheless, the ALJ found at step five that Plaintiff has the residual functional capacity to perform light work with postural and driving restrictions. Plaintiff is limited, however, to simple, routine, repetitive work with simple decision making, limited social contact, and only occasional workplace changes. AR 22. The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 23. The ALJ provided a thorough analysis to support this statement. AR 24-27.

Finally, the ALJ identified three representative jobs that Plaintiff could do that exist in significant numbers in the national economy: mail clerk, hand packager, and housekeeping cleaner. AR at 28-29. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 29.

**V.    DISCUSSION**

**A.    The ALJ Considered the Evidence Appropriately, and His Decision Was Supported by Substantial Evidence**

Plaintiff does not argue that the ALJ erred by failing to find that any specific impairment or set of impairments meets or medically equals one of the listed impairments. Plaintiff's argument instead is more general. Plaintiff contends that (1) the ALJ impermissibly "cherry picked" the evidence by relying upon portions of medical records and reports without considering the contrary material evidence in those documents and without considering the experts' overall conclusions, and (2) the decision overall is not supported by substantial evidence. As Plaintiff himself

acknowledges, these arguments overlap considerably. Doc. 11 at 11. Because the analysis of these arguments requires the Court to scrutinize both the ALJ's conclusions and the evidence he relied upon to reach those conclusions, the Court will discuss them together.

Plaintiff begins by citing portions of Exhibits 1F, 3F, 5F, 12F, and 27F[3] that he claims the ALJ relied upon to the exclusion of other, perhaps contrary, portions of those same exhibits. For example, Plaintiff argues first that the ALJ erred in concluding that Plaintiff "has shown poor attention span, but has more frequently shown logical thought process[] and intact concentration." Doc. 11 at 8 (citing AR 22). Plaintiff suggests that in order to reach that conclusion, the ALJ ignored evidence, including portions of Exhibit 1F (treatment notes from Dr. Cheshire at Integrated Healthcare). According to Plaintiff, the ALJ should have cited another portion of that exhibit in which Plaintiff responded to questions in a depression screening. Doc. 11 at 8. In those responses, Plaintiff indicated that he was feeling depressed, had little interest in doing things, and was having trouble concentrating on things nearly every day. Unfortunately for Plaintiff, the depression screening he cites does not come from Exhibit 1F or even from Dr. Chesire, but rather from Exhibit 3F (AR 422), which is a record from a visit to a different provider three years later. In any event, Plaintiff cited AR 422 (page 9 of Exhibit 3F) to show that at times Plaintiff does have a poor attention span—something the ALJ expressly acknowledged, stating "the claimant has shown poor attention span." AR 22. The ALJ simply found this evidence to be outweighed by the evidence that "more frequently" Plaintiff's logical thought processes and concentration were intact. The ALJ then cited several other medical records stating that Plaintiff's attention span, concentration, abstract thinking, and logical thought processes were good or intact. AR 22. This does not support

---

[3] Although Plaintiff mentions Exhibit 20F as one from which the ALJ "cherry picked," unlike the others he does not point to any specific portion of Exhibit 20F which the ALJ failed to consider. Accordingly, the Court will not discuss Exhibit 20F here.

Plaintiff's cherry-picking argument, but rather suggests that Plaintiff is merely unsatisfied with the way in which the ALJ weighed the evidence.

Plaintiff also cites to medical records indicating that he has reported symptoms of depression as well as an extensive history of traumatization beginning in childhood. Doc. 11 at 8-9. Plaintiff's implied (though not explicit) argument is that the ALJ should have found him to be entirely disabled due to depression. In fact, the ALJ acknowledged Plaintiff's major depressive disorder as one of his ten severe impairments. AR 19. Thus, this Court cannot conclude that the ALJ ignored the evidence of Plaintiff's depression. Rather, it appears that the ALJ properly considered Plaintiff's depressive disorder in evaluating whether Plaintiff's mental impairments meet the criteria of listings 12.03, 12.04, 12.06, or 12.15. AR 21-22. After such consideration, the ALJ concluded that the impairments were not sufficiently severe. *Id*. For example, the ALJ found that "[i]n interacting with others, the claimant has a moderate limitation." AR 21. In reaching that conclusion, the ALJ cited evidence from the record that supported a claim that Plaintiff suffers from anxious, depressed, or irritable mood. *Id*. He noted, however, that Plaintiff "has also shown good eye contact, cooperative attitude, and euthymic mood," and has good relationships with his wife and son. AR 21. Continuing to cite evidence in the record, the ALJ concluded that "[a]lthough the claimant reported some difficulties with interacting with others, the exam findings of his mental status would not support that his mental capacity is more than moderately limited in this area." AR 21 (citations omitted).

Plaintiff asserts that the ALJ cited Exhibit 3F (treatment records from Enchantment Health Care) to support the statement that he had "generally normal exam findings such as full range of motion in extremities, no edema, normal heel toe walking, normal gait and posture, 5/5/ grip strength, 5/5/ motor strength, intact sensory, and no issues with fine or gross manipulative skills."

Doc. 11 at 9 (citing AR 24). Although Plaintiff does not claim that Exhibit 3F does not support the ALJ's statement, he contends there are portions of Exhibit 3F that the ALJ failed to consider. Plaintiff cites to notations in the medical records where the provider set forth Plaintiff's report of physical symptoms, including pain, pressure, and throbbing in his neck; pain in his back and spine; and headaches. Doc. 11 at 9; AR 436, 439. Plaintiff claims that the ALJ erred by failing to consider his complaint to the doctor about these symptoms. Again, this does not undermine the ALJ's findings because the ALJ not only noted these symptoms but also concluded that Plaintiff indeed has severe impairments to include degenerative disc disease of the cervical and lumbar spine as well as headaches. Therefore, the ALJ's findings are in accord with the portion of Exhibit 3F that Plaintiff says he failed to consider. The fact that the ALJ did not conclude that these severe impairments left Plaintiff with no residual functional capacity is a result of the manner in which the ALJ weighed the evidence, not his failure to consider it.

Plaintiff also turns to Exhibit 5F, medical records from Dr. Thomas Whalen. Again, Plaintiff asserts that the ALJ failed to note a section of the record, AR 535, in which the provider lists Plaintiff's reported symptoms, including headaches as well as ongoing, increasing back pain for over five years. As previously explained, the ALJ's failure to cite this particular part of the medical records does not indicate that he ignored the information it contains—he did not discount Plaintiff's degenerative disc disease and headaches but instead found them to be severe impairments.

Next, Plaintiff claims that in concluding that Plaintiff has a normal gait and could perform light work, the ALJ relied on some portions of Exhibit 12F (medical records from Optum) while improperly failing to note the "History of Present Illness" description on AR 1024. That description from September 2015 states that Plaintiff complained of neck and upper back pain that

had been ongoing for three years, radiates down his back and arms with a constant aching and burning in his back. Plaintiff described his average pain as 9/10, numbness and tingling in his hands, and weakness in his back, with little relief from pain medications. AR 1024. As previously noted, while he did not cite this particular record, the ALJ did note Plaintiff's back pain and mild degenerative changes in his spine. AR 19-20. On the other hand, the ALJ balanced that evidence against the lack of imaging showing compromise of a nerve root in the cervical or lumbosacral spine, Plaintiff's ability to walk without an assistive device, his ability to use both of his upper extremities to complete work-related activities, and his "generally normal exam findings such as full range of motion in extremities, no edema, normal heel toe walking, normal gait and posture, 5/5 grip strength, 5/5 motor strength, intact sensory, and n issues with fine or gross manipulative skills." AR 20, 24. In other words, the ALJ considered both Plaintiff's subjective complaints and the objective medical evidence.

Similarly, Plaintiff argues that the ALJ cited portions of Exhibit 27F (the June 3, 2023, opinion of a consultative examiner from New Mexico Disability Determinations) in support of the conclusion that Plaintiff has "unimpaired or intact memory" without considering the examiner's whole opinion. The Court concludes, however, that the ALJ analyzed the examiner's entire report and accepted many of the conclusions therein, rejected others, and ultimately found it "partially persuasive." AR 27. For example, the ALJ agreed with the examiner that Plaintiff's "[r]ecent, remote, and immediate memory [are] intact," *see* AR 21 (citing AR 1659) and that Plaintiff has limited range of motion in his lumbar spine and moderate to severe limitations due to back pain. AR 27, 1659, 1660, 1662. The ALJ also agreed with the examiner that Plaintiff has limitations in mentation as well as moderate to severe limitations due to depression and anxiety. AR 27, 1659-60. But the ALJ disagreed with two of the examiner's conclusions. In light of other medical records

documenting Plaintiff's regularly shown normal gait and posture, the ALJ was not persuaded by the examiner's conclusion that Plaintiff is limited to occasional walking, sitting, and standing. AR 27, 1025, 1039 1044. The ALJ also discounted the examiner's finding that Plaintiff was limited to occasional lifting of 5 to 10 pounds because of the examiner's findings of normal muscle strength and no muscular weakness. AR 27, 705, 1658, 1662.

In short, the Court finds no indication that the ALJ cherry picked evidence to support only one outcome. Time and again, the ALJ's decision notes Plaintiff's ailments, pain, and impairments. As described above, however, the ALJ also gives weight to the objective findings documented in the records. Given the ALJ's comprehensive review of the record, the Court does not find that the ALJ cherry picked the evidence.

Furthermore, the ALJ's failure to note certain documents in the record does not support Plaintiff's claim that the decision is not supported by substantial evidence. As the Tenth Circuit has noted, an ALJ need not "discuss every piece of evidence." *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). Indeed, with over a thousand pages in the record, doing so would be impractical. Therefore, the Court must review the ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied," but it cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). Here, the Court is satisfied that the ALJ's decision is based on substantial evidence in the record. In the ALJ's weighing of that evidence, he balanced the Plaintiff's numerous impairments against documented, objective evidence of factors such as the ability to ambulate unassisted, normal grip strength, unimpaired motor strength, and unimpaired memory. At the end of the day, that balance led the ALJ to conclude that Plaintiff is limited in several physical and mental respects but retains

sufficient functional capacity to perform certain light work. That conclusion may not be the only acceptable one on this record, but it is reasonable and there is substantial evidence to support it as discussed herein.

**B.    The ALJ Did Not Fail to Consider the Impairments in Combination**

Plaintiff's final (and quite cursory) argument is that although the ALJ found that he has numerous impairments that "represent a broad spectrum of both physical and mental impairments," Doc. 11 at 14, the ALJ failed to consider them in combination as required under 42 U.S.C. § 423(d)(2)(B), 20 C.F.R. § 404.1523(c), and *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Plaintiff does not point to any specific deficiency in the ALJ's decision or any particular point at which the ALJ failed to consider the combination of Plaintiff's impairments, making this argument difficult to assess.

A review of the ALJ's decision, however, reveals that he did evaluate Plaintiff's impairments in combination. First, the ALJ set forth the appropriate analytical standard that recognizes that he must review impairments in combination. For example, the ALJ noted that at step two, he must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." AR 18. He also noted that at step three, he must determine whether Plaintiff's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. *Id*. The ALJ noted that in assessing the Plaintiff's residual functional capacity, he "must consider all of the claimant's impairments, including impairments that are not severe." *Id*. at 19.

Second, when determining whether Plaintiff has an impairment that meets the requisite severity of one of the listed impairments, the ALJ not only set forth the legal standard requiring him to evaluate the combination of Plaintiff's impairments, i*d*. at 20, he actually considered them

in combination. For example, the ALJ explicitly considered the Plaintiff's mental impairments in "remembering or applying information," (2) "interacting with others," (3) "concentrating, persisting, or maintaining pace," and (4) "adapting or managing oneself," both "singly and in combination," to determine if they satisfy the criteria for listings 12.03, 12.04, 12.06, and 12.15. AR 21-22.

Third, the ALJ again evaluated Plaintiff's residual functional capacity while considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, medical opinions, and prior administrative medical findings." AR at 23. The ALJ described the full range of Plaintiff's subjectively reported physical and mental symptoms, AR 23, and then he evaluated the "intensity, persistence, and limiting effects" of those symptoms and limitations in light of medical evidence and other evidence. *Id*. at 23-27.

As the Tenth Circuit has stated, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of Plaintiff's impairments, both alone and in combination. Because the record reflects that the ALJ did so, the Court will not overturn his conclusion.

## VI.    CONCLUSION

In summary, the ALJ thoroughly considered the evidence and did not "cherry pick." Furthermore, his opinion is supported by substantial evidence. Finally, the ALJ considered all of Plaintiff's symptoms in combination at steps two and three, as well as in assessing Plaintiff's residual functional capacity. The motion to remand will be denied.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Reverse the Administrative Law Judge (ALJ) Unfavorable Decision Dated April 29, 2024, or Alternatively, to Remand the Case Back to the Administrative Law Judge (ALJ)* [Doc. 10] is **DENIED**.

**IT IS FURTHER ORDERED** that the administrative law judge's final decision is **AFFIRMED** and this case is **DISMISSED WITH PREJUDICE**.

**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**